OPINION
{¶ 1} This is an accelerated calendar appeal submitted on the briefs of the parties from a judgment entry issued by the Ashtabula County Court of Common Pleas, in which the trial court rendered a verdict in favor of appellee, Hickory Grove Golf Club, Inc., and ordered appellant, Rodney G. Hedrick, to pay monetary damages.
 {¶ 2} The record discloses the following facts. In the early 1950s, appellant purchased a large piece of land in Lenox Township, Ashtabula County, for raising dairy cattle. At the time of his purchase, a fence separating his property from the adjoining landowner's property had already been erected. In 1952, appellant rebuilt the fence, with the help of the adjoining landowner, to deter trespass of his livestock.
 {¶ 3} In the early 1970s, appellee purchased the land adjacent to appellant and constructed a nine-hole golf course. The fourth hole of the golf course was 475 yards in length and was immediately adjacent to appellant's property. The previously discussed fence was the only barrier between appellant's farm and the fourth hole of appellee's golf course.
 {¶ 4} After many years of service, the fence had deteriorated due to age and could no longer adequately restrain appellant's livestock. Due to the condition of the fence, appellant requested appellee's assistance in constructing a new fence. Appellee felt that it had no duty to assist in building a new fence and refused to help with construction.
 {¶ 5} Appellant contacted his local township trustee, Robert Cotterman ("Cotterman"), to resolve the dispute over the fence. After speaking with both parties, Cotterman stated that the Board of Trustees was willing to construct a new fence and have the cost thereof split equally between them. For unknown reasons, appellant and appellee refused this proposal.
 {¶ 6} Despite minor repairs made by both parties, in November 1999, appellant's cows were able to break through the fence, and caused extensive damage to appellee's golf course. As a result, on December 14, 1999, appellee filed a verified complaint for injunctive relief, trespass and monetary damages.
 {¶ 7} On September 20, 2000, the parties were ordered to mediation. After mediation failed to resolve the dispute, this matter proceeded to trial on the issues of liability and damages. The trial court entered a judgment entry on March 13, 2002, finding appellant liable pursuant to R.C. 951.02 because he failed to use ordinary care in restraining his cattle, and awarded appellee damages in the amount of $5,000.
 {¶ 8} From this judgment, appellant filed a notice of appeal with this court, advancing one assignment of error for our consideration:
 {¶ 9} "[1.] Whether the trial court erred in granting the plaintiffs any sum of money in damages when the evidence disclosed that the plaintiff was contributorily negligent in failing to maintain a boundary line fence."
 {¶ 10} According to appellant, the evidence demonstrates that the fence separating appellant's farm and appellee's golf course is a partition fence. Thus, appellant concludes that both parties were under a duty to maintain or repair the fence, and appellee, having failed to do so, is contributorily negligent.
 {¶ 11} The first issue that must be resolved to properly determine appellant's assignment of error is whether a partition fence does in fact exist. If it is determined, by the manifest weight of the evidence, that a partition fence exists, then R.C. 971.02 is applicable. As with any manifest weight claim, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." State ex rel.Celebrezze v. Environmental Enterprises, Inc. (1990), 53 Ohio St.3d 147,154.
 {¶ 12} Generally speaking, a partition fence is located on the dividing line between the properties of adjacent landowners. Stir v.Hitchcock (Dec. 9, 1985), 4th Dist. No. 383, 1985 Ohio App. LEXIS 9959, at 5. Once its location has been determined, three separate methods establish a partition fence as a matter of law: (1) by a written agreement of the adjoining landowners, see, e.g., Stir at 5; (2) by adverse possession or prescription, see, e.g., Loughridge v. Hartshorn
(1911), 14 Ohio C.C. (N.S.) 161, 163-164; or (3) by statute, see, e.g.,McDonald v. Guyan Twp. Trustees (Feb. 21, 1995), 4th Dist. No. 94CA21, 1995 Ohio App. LEXIS 733, at 5-6.
 {¶ 13} The relevant method to be applied in the case at hand is creation by statute. R.C. 971.02 establishes a partition fence and the duties of each landowner:
 {¶ 14} "The owners of adjoining lands shall build, keep up, and maintain in good repair, in equal shares, all partition fences between them, unless otherwise agreed upon by them in writing and witnessed by two persons. The fact that any land or tract of land is wholly unenclosed or is not used, adapted, or intended by its owner for use for agricultural purposes shall not excuse the owner thereof from the obligations imposed by this chapter on him as an adjoining owner. This chapter does not apply to the enclosure of lots in municipal corporations, or of adjoining lands both of which are laid out into lots outside municipal corporations[.] * * *"
 {¶ 15} This statute states the general rule that a fence dividing separate pieces of land, which is not divided into lots inside or outside of a municipal corporation, is a partition fence, and the duty to build, maintain, or repair such fence is placed equally upon both landowners. See, e.g., McDonald at 5-6.
 {¶ 16} During trial, Gregory DelPrince ("DelPrince"), appellee's owner and employee, testified that the fence acted as a dividing line and ran along the boundary of its golf course and appellant's farm:
 {¶ 17} "Q: [DelPrince on direct examination] To the best of your knowledge, what is the purpose of that fence?
 {¶ 18} "A: I guess some type of boundary that borders a neighboring property.
 {¶ 19} "* * *
 {¶ 20} "Q: [DelPrince on cross-examination] And in your direct testimony you testified that it was a boundary line fence is that correct?
 {¶ 21} "A: It was a fence that borders the golf course and his [appellant's] property.
 {¶ 22} Cotterman, as a former township trustee, also testified that the fence between the golf course and farm separated the properties and acted as the boundary line for both pieces of land:
 {¶ 23} "Q: Was it your understanding, Mr. Cotterman, as trustee, that fence that separated the property was a boundary line fence?
 {¶ 24} "* * *
 {¶ 25} "A: Yes. I say yes."
 {¶ 26} At no time prior to or during trial did appellee set forth evidence demonstrating that the fence did not run along the boundary line of the two pieces of property. Furthermore, the evidence made clear that both pieces of land were outside of a municipal corporation and were not divided into separate sub-lots. Therefore, the only competent and credible evidence presented during trial established that, pursuant to R.C. 971.02, the fence in question was a partition fence.
 {¶ 27} If a dispute arises as to whether a partition fence exists, and an adjoining landowner refuses to uphold his duties, then the aggrieved landowner may take specific steps to resolve the problem. R.C.971.04 states:
 {¶ 28} "[W]hen a person neglects to build or repair a partition fence, or the portion thereof which he is required to build or maintain, the aggrieved person may complain to the board of township trustees of the township in which such land or fence is located. Such board, after not less than ten days' written notice to all adjoining landowners of the time and place of meeting, shall view the fence or premises where such fence is to be built[.] * * *"
 {¶ 29} After viewing the fence, the trustees must hold a hearing and allow each landowner to present evidence as to why or why not a partition fence exists. OAG No. 83-072
 {¶ 30} Once it has been established that a partition fence exists, the duty to build, maintain, or repair specific sections of the fence may be apportioned to the adjoining landowners by two methods. First, apportionment may be accomplished by adjoining landowners entering into a written agreement by which each landowner is to maintain a particular section of the fence. Stir at 5. Also, pursuant to R.C. 971.04, upon the trustees' conclusion that a partition fence exists, such trustees shall apportion segments thereof to each landowner to build, maintain, or repair.
 {¶ 31} Whether the fence in the case at bar was apportioned is relevant to our determination of liability. R.C. 971.22 provides that when livestock "trespasses upon land or an enclosure bounded by a partition fence, in consequence of the failure or neglect of a person to keep up and maintain in good repair his share of such fence, such person failing or neglecting shall pay to the person injured the damages sustained[.] * * *" However, where there has been no apportionment of a partition fence a suit should not be prosecuted under R.C. 971.22. Eichelv. Dudley (1962), 18 O.O.2d 158, 179 N.E.2d 812. Instead, when a fence is unapportioned, each owner is equally obligated to keep it in good repair. Id.
 {¶ 32} In the instant case, there is no evidence of an agreement by the parties to apportion the fence, or an apportionment by the trustees. Thus, an unapportioned partition fence exists and both parties were under a duty to keep the entire fence in good repair pursuant to R.C. 971.02.
 {¶ 33} An exception, however, provides that an adjoining landowner's duties under R.C. 971.02 are not absolute. Duncan v. VernonTwp. Trustees (Jan. 16, 2001), 12th Dist. No. CA2000-05-015, 2001 Ohio App. LEXIS 90, at 6, citing Glass v. Dryden (1969), 18 Ohio St.2d 149. See, also, Union Twp. Bd. of Trustees v. Phelps (Oct. 31, 1990), 3d Dist. No. 14-89-18, 1990 Ohio App. LEXIS 4785, at 10. Rather, these duties are extinguished if the cost to build or maintain the fence "exceed[s] the difference between the value of the land before and after the repair or construction of the fence." Duncan at 6. In other words, if the cost of construction, maintenance, or repair of a partition fence exceeds the beneficial value of the fence to one of the adjoining landowners, then such landowner's duties are dissolved. Id.
 {¶ 34} It is well-established that the landowner claiming that there is no benefit "bears the burden of proving that a fence will not enhance the value of his property." Parks v. Wayne Twp. Trustees (July 19, 1999), 12th Dist. No. CA99-01-005, 1999 Ohio App. LEXIS 3346, at 6. If such landowner fails to set forth proof regarding the value of his or her property before and after the fence is built or repaired, then it will be presumed that there is a benefit to each adjoining landowner.Duncan at 8.
 {¶ 35} There has been confusion as to what type of evidence satisfies the landowner's burden of proof. Two cases are relevant in determining the type of evidence necessary. In Wurzelbacher v. ColerainTwp. Bd. of Trustees (1995), 105 Ohio App.3d 97, 101, the court held that a landowner's unrebutted assertion that a fence was of no value was the only competent evidence provided and was sufficient to satisfy his burden of proof. Prior to the court's decision, the township trustees had held a formal hearing, with both parties presenting evidence, and found that the cost of the fence would exceed the value of any benefit to the landowner. Id. at 99. Thus, initially the trustees found that such landowner was under no duty to build or maintain the fence. Id.
 {¶ 36} In Duncan, the court held that a landowner's unrebutted assertion that a fence was of no value was not sufficient to satisfy his burden of proof. Id. at 14. The court stated that Duncan was factually distinguishable from Wurzelbacher in that "contrary to Wurzelbach [sic], the Trustees in this case, after viewing the properties and assessing the credibility of the [landowner's] testimony determined that [landowner] should share equally in the cost of constructing the partition fence." Id. The court reasoned that the trustees' finding that the cost of the fence did not exceed the value of any benefit to the landowner is afforded a presumption of validity, and a mere unrebutted assertion is not sufficient to overcome this presumption. Id.
 {¶ 37} In the case at bar, during direct examination, DelPrince gave the following testimony:
 {¶ 38} "Q: As far as this fence goes, did you have any reason to have a fence between the two properties?
 {¶ 39} "A: No not that I would think of No, uh-uh.
 {¶ 40} "Q: What is your business, sir?
 {¶ 41} "A: We're in the business of golfing.
 {¶ 42} "Q: Do you have any reason to keep your golfers off the adjoining landowner's property?
 {¶ 43} "A: No."
 {¶ 44} Furthermore, William McCune ("McCune"), appellee's head groundskeeper, gave the following testimony during direct examination:
 {¶ 45} "Q: Do you have any reason to have a fence that ran the boundary, for lack of a better term, on your golf course?
 {¶ 46} "A: No.
 {¶ 47} "* * *
 {¶ 48} "Q: And what was the purpose of that fence if you know?
 {¶ 49} "A: I don't know. There was no purpose to Hickory Grove Golf Course for the fence."
 {¶ 50} The foregoing testimony by Delprince and McCune represent mere assertions that the fence separating the adjacent pieces of land was of no beneficial value to appellee. At no time during trial did appellee offer any objective evidence regarding the maintenance or repair costs associated with the fence. For instance, appellee set forth no expert witness testimony or reports which would assist in determining the cost of the fence. Appellee also did not introduce any objective evidence which displayed the value of the golf course before and after construction or repair of the fence. The only evidence received by the trial court was appellee's employees' mere assertions that the fence was of no beneficial value to the golf course.
 {¶ 51} Appellant failed to rebut appellee's assertions with evidence of his own regarding the cost of maintenance, repair, or construction of a new fence. Appellant provided no expert witness testimony or reports which detailed the relevant costs and values associated with the fence.
 {¶ 52} It is clear that appellee made an unrebutted assertion that the golf course would receive no beneficial value from the construction or repair of the fence. Therefore, we must determine whether appellee's mere unrebutted assertion is sufficient evidence to prove that the cost of the fence is greater than the value of any benefit to appellee's land.
 {¶ 53} As in Duncan, our determination in this regard will depend upon any previous findings made by township trustees that would afford a presumption of validity which an unrebutted assertion cannot overcome.
 {¶ 54} During trial it was explained that appellant contacted Cotterman, in his capacity as a township trustee at that time, in the hopes of resolving the parties' dispute. After viewing the fence and speaking with both parties, Cotterman discussed the matter with the rest of the trustees who offered to construct a boundary line fence and split the costs equally between both parties. The trustees, however, never held a formal hearing regarding the parties' contentions as to their duties with respect to repair or maintenance of the fence. As a result, neither party was given the opportunity to present evidence to the trustees with regards to the cost and beneficial value of the fence. Because the trustees did not hold a formal hearing as required by R.C. 971.04, no official findings were made as to the cost of repairing or rebuilding the fence, or the value of any benefit the appellant might receive from the fence.
 {¶ 55} Due to the absence of any official findings by the trustees, there was no presumption of validity that would have precluded appellee's mere unrebutted assertion from satisfying his burden of proof. Accordingly, we find that appellee satisfied its burden of demonstrating that the fence was of no beneficial value to its golf course. As a result, appellee's duties to repair or rebuild the fence, under R.C.971.02, were extinguished and appellant is solely liable for any damages caused by the trespass of his livestock upon appellee's golf course.
 {¶ 56} Based upon the foregoing analysis appellant's assignment of error is without merit. Although the trial court erroneously applied R.C. 951.02, our application of R.C. 971.02 does not alter the ultimate outcome. Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL, J., concurs.
DIANE V. GRENDELL, J., concurs in judgment only.